## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| **CRAIG KIMMEL**, *on behalf of himself and others similarly situated,* | Civil Action No. 5:25-cv-00420 |
| Plaintiff, | CLASS ACTION |
| v. | |
| **IHEARTMEDIA, INC.,** | **Jury Trial Demanded** |
| Defendant. | |

### CLASS ACTION COMPLAINT

Craig Kimmel ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, submits his Complaint against iHeartMedia, Inc. ("Defendant"). In support thereof, Plaintiff states as follows:

### NATURE OF THE CASE

1.  Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA") sets forth restrictions on the use of automated telephone equipment and prerecorded voice calls, and provides in pertinent part:

    It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

    (A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

    *****

    (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

2.  Upon information and good faith belief, Defendant routinely violates 47 U.S.C. §

227(b)(1)(A)(iii) by placing non-emergency telephone calls to persons' cellular telephone numbers using an artificial or prerecorded voice, without the prior express consent of those persons.

3. The calls at issue are marketing calls placed to persons that do not have any relationship with Defendant and that attempt to solicit those persons to visit Defendant's automotive dealer and servicer clients' service departments so that Defendant's automotive dealer and servicer clients can service the call recipients' vehicles and generate revenue as a result.

## BACKGROUND ON THE TCPA

4. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights—specifically, the right to be left alone from unwanted telemarketing calls.

5. A leading sponsor of the TCPA described telemarketing "robocalls" as the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

6. Decades after the TCPA passed into law, it is still unfortunately the case that "month after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

7. In fact, in 2023 alone, there were over **two million complaints** from Americans to the FTC about unwanted telemarketing calls.[1]

8. In 2024 alone, approximately 52 billion robocalls were placed in the United States.[2]

---

[1]  *See* Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 8, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/01/ftc-issues-biennial-report-congress-national-do-not-call-registry (last visited Apr. 15, 2025).

[2]  *See* RobocallIndex.com, YouMail Robocall Index, https://robocallindex.com/history/time (last visited Apr. 15, 2025).

9. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls.

10. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount.[3]

## JURISDICTION AND VENUE

11. This Court has subject-matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

12. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District and, upon information and belief, Defendant directed its prerecorded call to Plaintiff from this District.

13. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

14. Plaintiff is a natural person who, at all relevant times, resided in New Hope, Pennsylvania.

15. Plaintiff is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

16. Defendant is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 20880 Stone Oak Parkway, San Antonio, Texas 78258-7460.

---

[3] *See* Sarah Krouse, The FCC Has Fined Robocallers $208 Million. It's Collected $6,790, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803 (last visited Apr. 15, 2025).

17. Defendant may be served via its registered agent C T Corporation System located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

18. Defendant is, and at all relevant times was, a "person" as that term is defined by 47 U.S.C. §153(39).

19. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

20. Defendant is a media and marketing company offering marketing solutions at the national, regional and local levels in a broad array of categories, including but not limited to the automotive category.

21. Defendant developed and launched a national marketing program called "iServiceNow" that Defendant markets to automotive dealers and servicers throughout the United States.

22. Defendant markets its "iServiceNow" program as a way for automotive dealers and servicers to engage with, market to and conquest new in-market customers.

23. The main goal of the "iServiceNow" program is to drive new service customers to Defendant's automotive dealer and servicer clients for repair work and to convert those consumers into lifelong customers of the Defendant's automotive dealer and servicer clients.

24. Defendant solicits potential customers for its automotive dealer and servicer clients via unsolicited artificial or prerecorded telephone calls in violation of the TCPA.

25. Upon information and belief, Defendant identifies vehicles of the particular brands serviced by its automotive dealer and servicer clients that are registered to owners located within a certain radius of its clients' facilities.

26. Upon information and belief, Defendant then attempts to identify the owners of such vehicles and their associated contact information, including the owners' telephone numbers.

27. Upon information and belief, Defendant then places, or causes to be placed, telephone calls to the owners' telephone numbers with an artificial or prerecorded message that suggests there is a recall associated with the identified vehicle and attempts to solicit the owner to bring their vehicle to Defendant's automotive dealer and servicer clients for repair.

28. Upon information and belief, the primary purpose of the calls Defendant places, or causes to be placed, is to drive new customers to its automotive dealer and servicer clients so that its automotive dealer and servicer clients can increase revenue associated with repairs, including both recall and non-recall related repairs.

29. Upon information and belief, the primary purpose of the calls is not to have recall work completed.

30. Upon information and belief, the data Defendant obtains about vehicles located within a selected radius of its automotive dealer and servicer clients does not indicate if a recall has already been completed by a dealership or the owner of the vehicle.

31. Upon information and belief, Defendant uses the fact that a recall may be associated with a vehicle as a way to increase the chance a consumer will engage with Defendant's advertising/marketing campaign.

32. As shown in the marketing advertisement below, Defendant uses the same script for every prerecorded message and inserts the vehicle year make of the identified vehicle and the name of its dealership client into the message.

33. When a called party presses "1", they are connected to Defendant's call center that assists with scheduling an appointment with Defendant's automotive dealer and servicer clients.



34. In May of 2023, Defendant marketed its "iServiceNow" program to a BMW dealership in Pennsylvania located near Plaintiff's residence.

35. Defendant marketed the "iServiceNow" to this BMW dealership as a way the BMW dealership could gain lifelong customers.

36. Upon information and belief, Defendant identified BMWs registered to individuals within a certain radius of this BMW dealership.

37. Upon information and belief, Defendant obtained telephone numbers Defendant believed to be associated with the individuals that Defendant identified as being the owners of these vehicles.

38. Defendant then placed, or caused to be placed, artificial or prerecorded calls to the telephone numbers it obtained independently.

39. Defendant did not have consent from any of the persons it called.

40. At all times relevant hereto, Plaintiff is and was the owner, subscriber and customary user of a cellular telephone, the number for which was (267) XXX-7703.

41. Upon information and belief, Defendant obtained information related to a 2009 BMW X-6 that it associated with Plaintiff.

42. Upon information and belief, Defendant independently obtained Plaintiff's cellular telephone number and loaded it into its dialer system to be called on behalf of its BMW dealership client.

43. On or around April 8, 2024 at 2:07 pm, Defendant placed, or caused to be placed, a call from telephone number (610) 665-3805 to Plaintiff's cellular telephone and left the following prerecorded message on Plaintiff's voicemail:

> Hi there! And yes, this is a recording, but it could save your life. I'm Tori from BMW Mini of Main Line and your 2009 BMW X-6 needs service now. It has a serious recall, and we can fix it for you – for free. Just call 610-665-3805 to talk to our recall service team and they will schedule your appointment right away.

44. Plaintiff knew the call featured a prerecorded message because the tone and cadence of the message was computerized.

45. The message also included awkward pauses before "BMW Mini of Main Line", and the year and vehicle model, which is likely because the system was configured to call from a database and input the dealership name and a specific vehicle year, make and model.[4]

46. Further, the message stated "this is a recording."

47. Plaintiff never provided express written consent—or any consent—for Defendant to place calls which utilized an artificial or prerecorded voice to his cellular telephone.

48. Plaintiff never provided express written consent—or any consent—for the BMW dealership referenced in the prerecorded message to place calls which utilized a prerecorded voice to his cellular telephone.

49. Plaintiff does not have, nor did he have, a relationship with Defendant.

50. Plaintiff does not have, nor did he have, a relationship with the BMW dealership referenced in the prerecorded message.

51. Plaintiff is not, nor was, a customer of the BMW dealership referenced in the prerecorded message.

52. Plaintiff did not, and never has, purchased any vehicles from the BMW dealership referenced in the prerecorded message.

53. At the time of the call, Plaintiff did not own a 2009 BMW X-6.

---

[4] Plaintiff's initial investigation has revealed that this same marketing scheme is used by different dealers across the country. *See, e.g.,* https://directory.youmail.com/phone/720-790-3454 (last visited Apr. 15, 2025) (consumer report of same recording featuring Tori but for "Sport Mazda South" regarding a "2007 Mazda."); https://directory.youmail.com/phone/407-871-3152 (last visited Apr. 15, 2025) (consumer reports of same recording featuring Tori but for "Antwepren CDJR" regarding a "2012 Dodge Avenger" and Sutherland Nissan Orlando for a "2014 Nissan Altima").

8

54. Plaintiff did not provide his cellular telephone number to Defendant.

55. Plaintiff did not provide his cellular telephone number to the BMW dealership referenced in the prerecorded message.

56. Upon information and good faith belief, Defendant placed, or caused to be placed, the subject call, in connection with which it used an artificial or prerecorded voice, to Plaintiff, for non-emergency purposes.

57. Upon information and good faith belief, Defendant's reference to a "recall" was a marketing scheme designed to increase the likelihood that a consumer would call back and schedule an appointment with Defendant's automotive dealer and servicer clients where Defendant's automotive dealer and servicer clients could then solicit the consumer with additional products and services.

58. For example, the BMW dealership associated with the call has a business model where it promotes repair, upgrades and maintenance services through its performance of recalls on BMW vehicles, which is reflected on the dealership's webpage, an excerpt of which is set forth below:





59.     Upon information and good faith belief, Defendant's outbound prerecorded telephone call was not about any specific vehicle recall.

60.     Indeed, Plaintiff did not own a 2009 BMW X-6 at the time of the call, and therefore the call could not have been for an emergency purpose.

61.     Rather, the call was for telemarketing purposes and used a recall as a pretext for selling vehicles and/or maintenance services.

62.     Upon information and good faith belief, Defendant acquired "leads" or consumer information for individuals within a certain proximity of their dealership and placed, or caused to be placed, calls to them in an attempt to solicit them to become customers of Defendant' automotive dealer and servicer clients.

10

63. For example, when the telephone number that was left in the artificial or prerecorded message received by Plaintiff is called back (*i.e.*, 610-665-3805), a prerecorded message plays that states:

> Hey. This is Tori from BMW and Mini of Main Line. I'm here to help you with your recalled vehicle. Our records show you own a brand we service. If that's correct press one. If not, press two.

64. Upon information and belief, telephone number 610-665-3805 is associated with Defendant's call center.

65. Upon information and belief, Defendant uses this message to prescreen callbacks and eliminate callers that do not have the specific vehicle brand associated with its automotive dealer and servicer client the call related to because Defendant is not certain if the consumer data or leads it obtained or purchased to place its prerecorded calls are accurate.

66. When a consumer presses one, the prerecorded or artificial voice states that the call is being transferred to a "recall representative."

67. Upon information and good faith belief, when a consumer would connect to Defendant, Defendant would use that opportunity to market or solicit the products or services of its automotive dealer and servicer clients.

68. When a consumer presses two, the prerecorded or artificial voice states, "Thanks for the feedback, we will update our records. Have a great day" and then the call is terminated.

69. Defendant placed, or caused to be placed, the subject call, in connection with which it used an artificial or prerecorded voice, to Plaintiff voluntarily.

70. Defendant placed, or caused to be placed, the subject call, in connection with which it used an artificial or prerecorded voice, to Plaintiff under its own free will.

71. Defendant had knowledge that it was using an artificial or prerecorded voice in connection with the call it placed, or caused to be placed, to Plaintiff.

11

72. Plaintiff suffered actual harm as a result of Defendant's subject call in connection with which it used an artificial or prerecorded voice, in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

73. For example, Plaintiff spent time tending to the call, including listening to the prerecorded voice message Defendant played or delivered.

74. Defendant's prerecorded message also utilized Plaintiff's voicemail, occupied the capacity of Plaintiff's cellular telephone, and depleted his battery.

75. Upon information and good faith belief, Defendant, as a matter of pattern and practice, uses an artificial or prerecorded voice in connection with calls it places to telephone numbers assigned to a cellular telephone service, absent prior express consent.

## CLASS ALLEGATIONS

76. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b) on behalf of himself and a class of similarly situated individuals as defined below:

> All persons throughout the United States (1) to whom iHeartMedia, Inc. placed, or caused to be placed, a call, (2) directed to a number assigned to a cellular telephone service, (3) but not assigned to a person or entity who is or was a customer of iHeartMedia, Inc.'s automotive dealer or servicer client on whose behalf iHeartMedia, Inc. placed, or caused to be placed, the call, (4) in connection with which iHeartMedia, Inc. used an artificial or prerecorded voice, (5) from four years prior to the date of this class action complaint through the date of class certification.

77. Excluded from the class are Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

78. Plaintiff reserves the right to amend or modify the class definition consistent with the record developed in this Action.

79. Upon information and belief, the proposed class is so numerous that joinder of all members is impracticable.

80. The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

81. The proposed class is ascertainable because it is defined by reference to objective criteria.

82. In addition, the cellular telephone numbers of all members of the class can be identified in business records maintained by Defendant and third parties, including class members.

83. Plaintiff's claims are typical of the claims of the members of the class because all of the class members' claims originate from the same conduct, practice and procedure on the part of Defendant, and Plaintiff possesses the same interests and has suffered the same injuries as each class member.

84. Like all members of the proposed class, Plaintiff received an artificial or prerecorded voice message from Defendant, without his consent, in violation of 47 U.S.C. § 227.

85. Plaintiff will fairly and adequately protect the interests of the members of the class and has retained counsel experienced and competent in class action litigation.

86. Plaintiff has no interests that are contrary to or in conflict with the members of the class that he seeks to represent.

87. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

88. Furthermore, as the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the class to individually redress the wrongs done to them.

89. There will be little difficulty in the management of this action as a class action.

90. Issues of law and fact common to the members of the class predominate over any questions that may affect only individual members, in that Defendant has acted on grounds generally applicable to the class.

91. Among the issues of law and fact common to the class are:

   a. Defendant's violations of the TCPA as alleged in this class action complaint;

   b. Defendant's use of an artificial or prerecorded voice in connection with its calls;

   c. Defendant's practice of delivering artificial or prerecorded voice messages to non-customers;

   d. Whether Defendant is liable for artificial and prerecorded voice messages it delivered to persons without their prior express consent; and

   e. the availability of statutory damages.

92. Absent a class action, Defendant's violations of the law will be allowed to proceed without a full, fair, judicially supervised remedy.

## COUNT I
### Violation of 47 U.S.C. § 227(b)(1)(A)(iii)

93. Plaintiff incorporates the allegations in the previous paragraphs as if fully stated in this Count.

94. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed, or caused to be placed, to Plaintiff's cellular telephone number, and the cellular telephone numbers of members of the proposed class, for non-emergency purposes and without their consent.

95. Defendant willfully and knowingly violated 47 U.S.C. § 227(b)(1)(A)(iii) in that it willfully and knowingly used, or caused to be used, an artificial or prerecorded voice in connection with

calls it placed, or caused to be placed, to Plaintiff's cellular telephone number, and the cellular telephone numbers of members of the proposed class, for non-emergency purposes and without their consent.

96. As a result of Defendant's violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiff and the members of the class are entitled to damages in an amount to be proven at trial.

## **Prayer for Judgment**

WHEREFORE, Plaintiff requests the Court grant the following relief:

a) Determining that this action is a proper class action;

b) Designating Plaintiff as the class representative under Rule 23 of the Federal Rules of Civil Procedure;

c) Designating Plaintiff's counsel as counsel for the class under Federal Rule of Civil Procedure 23;

d) Adjudging that Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii);

e) Enjoining Defendant from continuing to place calls, in connection with which it uses an artificial or prerecorded voice, to Plaintiff and members of the proposed class without their prior express consent, and from committing further violations of 47 U.S.C. § 227(b)(1)(A)(iii);

f) Awarding Plaintiff and members of the class statutory damages pursuant to 47 U.S.C. § 227(b)(3) in an amount up to $500.00 per violation;

g) Awarding Plaintiff and members of the class statutory damages pursuant to 47 U.S.C. § 227(b)(3) in an amount up to $1,500.00 per violation if Defendant's violations are determined to be willful or knowing;

h) Awarding Plaintiff and members of the class their reasonable costs, expenses, and attorneys' fees incurred in this action, including expert fees, pursuant to Rule 23 of the Federal Rules of Civil Procedure;

i) Awarding Plaintiff and the members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

j) Awarding other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff, demands a jury trial in this case on any and all triable issues.

Respectfully submitted,

Date: April 17, 2025

*/s/ Aaron D. Radbil*
Aaron D. Radbil (Bar No. 24094090)
James L. Davidson*
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Rd., Suite 500
Boca Raton, Florida 33431
(561) 826-5477
aradbil@gdrlawfirm.com
jdavidson@gdrlawfirm.com

Max S. Morgan, Esquire*
THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com

*pro hac vice forthcoming*

*Counsel for Plaintiff and the proposed class*